**KIRKLAND & ELLIS LLP**
Lauren Schweitzer (State Bar No. 301654)
lauren.schweitzer@kirkland.com
333 South Hope Street
29th Floor
Los Angeles, CA 90071
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500

**KIRKLAND & ELLIS LLP**
Russell E. Levine, P.C. (*pro hac vice pending*)
rlevine@kirkland.com
Kourtney Baltzer (*pro hac vice pending*)
Kourtney.baltzer@kirkland.com
300 N LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

*Attorneys for Defendant Pollard Banknote Limited*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| NANOGRAFIX CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>POLLARD BANKNOTE LIMITED, a Canadian corporation,<br><br>Defendant. | CASE NO. 2:18-cv-06735<br><br>**DEFENDANT POLLARD BANKNOTE LIMITED'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Judge:          Hon. George H. Wu<br>Hearing Date:   December 17, 2018<br>Hearing Time:   8:30 a.m.<br>Courtroom:      9D |

# **TABLE OF CONTENTS**

**Page**

I. ....... THIS CASE HAS NO CONNECTION TO THE CENTRAL DISTRICT OF CALIFORNIA .................................................................................1

II. ...... MULTIPLE FACTORS ARE WEIGHED TO DETERMINE IF TRANSFER IS APPROPRIATE ...................................................................3

III. ..... THE APPLICABLE LAW SUPPORTS TRANSFER ...........................4

      A.    This Action Could Have Been Brought in the Eastern District of Michigan. ...................................................................................4

IV. .... THIS CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN. ...................................................................5

          1.    The Convenience of the Parties and the Ease of Access to Sources of Proof. .....................................................................5

          2.    The Convenience Of Witnesses And Availability Of Compulsory Process. ..........................................................11

          3.    The Differences In The Costs of Litigation In The Two Forums.....12

          4.    The Contacts Relating to the Plaintiff's Cause of Action In The Chosen Forum.......................................................13

          5.    Familiarity With Governing Law. ......................................14

          6.    Interests of Justice...............................................................14

V. ...... CONCLUSION.......................................................................................14

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ........................................................................ 3

*Ezieme v. Ward Int'l. Trading, Inc.*
   No. 08-cv-6748, 2009 WL 2818394 (C.D. Cal. Aug. 31, 2009) .............................. 11

*Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*,
   No. CV 16-2286, 2016 WL 7496721 (C.D. Cal. Aug. 8, 2016) .............. 3, 4, 5, 6, 10

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ................................................................... 13

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ........................................................... 3, 14

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) .......................................................... 6, 9, 11

*In re Hoffman La-Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ................................................................... 11

*In re HTC Corp.*,
   889 F.3d 1349 (Fed. Cir. 2018) ..................................................................... 5

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................... 3, 6, 12, 13, 14

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ........................................................................ 10

*Maatuk v. Emerson Elec., Inc.*,
   CV 16-6177-GW(JPRx), 2016 WL 10100271 (C.D. Cal. Nov. 21, 2016) .............. 14

*Managed Protected Servs., Inc. v. Credo Petroleum Corp.*,
   No. CV-12-00080, 2012 WL 3264515 (D. Ariz. Aug. 9, 2012) .............................. 11

*Nikola Corp. v. Tesla Incorporated*,
   No. CV-18-01344-PHX-JAS (BPV) (D. Ariz. Oct. 29, 2018)................................. 1, 3

*Pralinsky v. Mut. of Omaha Ins.*,
   No. 08-cv-03191, 2008 WL 4532563 (N.D. Cal. Oct. 9, 2008) .............................. 12

*Qurio Holdings, Inc. v. DISH Network Corp.*,
   No. 15-CV-00930, 2015 WL 4148962 (N.D. Cal. July 9, 2015) ............................. 14

*Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.*,
   No. 14-cv-3133, 2015 WL 5766170 (C.D. Cal. Jan. 20, 2015) ...................... 4, 6, 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)..................................................................................4

*TC Heartland v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017)...........................................................................5

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)................................................................................3

*Ventress v. Japan Airlines*,
   486 F.3d 1111 (9th Cir. 2007) ............................................................1, 3

**Statutes**

28 U.S.C. § 1391(c)(3)...................................................................................5

28 U.S.C. § 1404(a) ...............................................................................3, 4, 5

iii

# I. THIS CASE HAS NO CONNECTION TO THE CENTRAL DISTRICT OF CALIFORNIA

The Central District of California has no connection to the current dispute. Neither party maintains a place of business within this District, nor does either party have pertinent witnesses or relevant documents located here. Pollard does not maintain any offices or employees in either California generally or the Central District of California specifically. (Ward Decl. ¶ 2.) The alleged invention was not conceived and reduced to practice in this District; those activities took place in Mexico. The accused products are not manufactured in California and are not being sold to end-use consumers in this District, nor anywhere in the State of California.

In contrast, a substantial portion of the relevant evidence, as well as many of the witnesses with knowledge of the relevant facts, are located within the Eastern District of Michigan. Indeed, although Pollard is a Canadian corporation headquartered in Winnipeg, its primary United States business operations are located in Ypsilanti, Michigan which is within the Eastern District of Michigan. Pollard is licensed to do business in the State of Michigan, and has a registered agent for service of process in Michigan. (Ex. 1, Pollard Business Registration in Michigan.) At the time the complaint was filed in this case, all of the accused Scratch FX tickets sold in the U.S. market were manufactured in the Ypsilanti facility. (Ward Decl. ¶ 3.) *Nikola Corp. v. Tesla Incorporated*, No. CV-18-01344-PHX-JAS (BPV) at 1 n.1 (D. Ariz. Oct. 29, 2018) (report and recommendation, attached as Ex. 2, indicating that "for the purposes of determining whether to transfer, the Court considers the facts that existed at the time the case was brought" citing *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007)). In addition to being manufactured in the Eastern District of Michigan, the accused products also are being sold to end-use consumers in the Eastern District of Michigan. In fact, more accused products are sold in the State of Michigan than any other state. (Ward Decl. ¶ 3.) Tellingly, Nanografix used a Michigan Lottery Scratch FX ticket as an example in its Complaint. (*See* Dkt. 1 ¶¶ 30-36 and Dkt. 1-4.)

Notwithstanding the lack of ties to the Central District of California, and the strong connection with the Eastern District of Michigan, Nanografix filed this action against Pollard in this District. Nanografix alleges that Pollard's Scratch FX tickets infringe U.S. Patent No. 6,443,494 ("the '494 patent"). Pollard's Scratch FX tickets are a brand of instant-win scratch-off lottery tickets. (Ward Decl. ¶ 3.) The witnesses knowledgeable about the manufacture and design of the Scratch FX tickets are primarily located in Ypsilanti, Michigan and the documents relating to the manufacture and design of the Scratch FX tickets are primarily located in Ypsilanti too. (Ward Decl. ¶¶ 4-5.) Further, none of Pollard's Scratch FX tickets are being sold to consumers in the state of California. (Ward Decl. ¶ 10.) Pollard's relevant witnesses and documents simply have no connection to this venue.

Nanografix is a California corporation with its "principal place of business" allegedly in San Diego, California at 3830 Valley Centre Dr, Suite 705. (Dkt. 1, ¶ 7.) Its "principal place of business," however, is just a rental mailbox at a PostalAnnex located in San Diego, which Nanografix has used to give its company an address for a "professional appearance." (*See* Ex. 3, PostalAnnex Website (showing rental mailbox address at 3830 Valley Centre Dr, Suite 705).) Nanografix does not actually have any place of business in California, let alone in this district. The alleged invention of the asserted patent occurred in Santa Maria La Ribera, Mexico near Mexico City. (Dkt. 1-1.) This location is also associated with a company called Hologramas de Mexcio, which "has been manufacturing holograms since 1984," and which is owned and was established by the President of Nanografix, Daniel Lieberman. (Ex. 4, Hologramas de Mexico Website; Ex. 5, HoloWebs Article.) Nanografix's documents relating to the development of the alleged invention and any products that embody the alleged invention are presumably located at this facility near Mexico City. This location is nearly as far from the Central District of California as the Eastern District of Michigan.

This case has simply no connection to the Central District of California and should be transferred to the Eastern District of Michigan where a substantial amount of

the witnesses and relevant documents are located and where the hub of Pollard's manufacture of the Scratch FX tickets occurs.   Accordingly, Pollard respectfully requests, for the convenience of the parties and witnesses, and in the interest of justice, that the Court transfer this case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

## II.   MULTIPLE FACTORS ARE WEIGHED TO DETERMINE IF TRANSFER IS APPROPRIATE

A case may be transferred under §1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice … to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of allowing § 1404 transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The moving party bears the burden of showing the district sought is a more appropriate forum for the action.  *Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*, No. CV 16-2286, 2016 WL 7496721, at *2 (C.D. Cal. Aug. 8, 2016).  First, a defendant must establish that the district sought is one in which the matter "might have been brought."  *Id.*  Second, courts must consider the convenience of parties, convenience of witnesses, and the interests of justice.  *Id.*  To meet its burden, the moving party must demonstrate that both private and public interests favor a transfer and overcome the choice of forum made by the non-moving party.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "[F]or the purposes of determining whether to transfer, the Court considers the facts that existed at the time the case was brought." *Nikola Corp. v. Tesla Inc.*, No. CV- 18-01344-PHX-JAS (BPV), at *1 n.1 (D. Ariz. Oct. 29, 2018) (report and recommendation attached as Ex. 2 (citing *Ventress*, 486 F.3d at 1118); *see also In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

In patent cases, a motion to transfer venue is governed by the law of the regional circuit.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  Courts in the

Ninth Circuit weigh multiple factors to determine whether transfer is appropriate under §1404(a) in a particular case, including: the convenience of the parties, the convenience of witnesses, the differences in the costs of litigation in the two forums, the ease of access to sources of proof in each forum, the contacts relating to the plaintiff's cause of action in the chosen forum, the plaintiff's choice of forum, and the state that is most familiar with the governing law. *Fontem*, 2016 WL 7496721, at *2-*5. Because these factors cannot be mechanically applied to all types of cases, "they shall be considered in the context of the requirements of the convenience of the witnesses, the convenience of parties, and the interests of justice." *Id.* at *2. Further, the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

In patent infringement actions, the preferred forum "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.*, No. 14-cv-3133, 2015 WL 5766170, at *4 (C.D. Cal. Jan. 20, 2015). Consequently, this location is often where "the design and construction of the accused product" occurs. *Id.*

## III.    THE APPLICABLE LAW SUPPORTS TRANSFER

### A.    This Action Could Have Been Brought in the Eastern District of Michigan.

The analysis under § 1404(a) is "two-fold." *Id.* First, the defendant must show that the venue sought is one where the matter "might have been brought." § 1404(a); *Fontem*, 2016 WL 7496721, at *2. The defendant must "demonstrat[e] that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Id.* As this is a claim for patent infringement, it is undisputed that this case arises under the patent laws of the United States, Title 35 of the United States Code § 1 *et seq.* (Dkt. 1 at ¶ 1.) Thus, the Eastern District of Michigan has subject matter jurisdiction over this matter under

28 U.S.C. §§ 1331 and 1338(a). (*Id.*) Pollard has business operations in the United States located in the Eastern District of Michigan in Ypsilanti, Michigan, including a manufacturing facility and over 140 employees that are involved in the manufacture, distribution, or sale of Scratch FX tickets. (Ward Decl. ¶ 2.) Thus, Pollard is subject to personal jurisdiction in the Eastern District of Michigan.

Venue is proper in the Eastern District of Michigan as well. A foreign company sued in a patent infringement action is subject to the general venue provision for foreign defendants. *In re HTC Corp.*, 889 F.3d 1349, 1356 (Fed. Cir. 2018).[1] "A defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). As Nanografix acknowledges, Pollard is a Canadian corporation with its principal place of business in Winnipeg, Manitoba, Canada. (Dkt. 1 at ¶ 8.) Accordingly, Nanografix could have filed this case in the Eastern District of Michigan.

## IV.  THIS CASE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN.

After determining that the district sought is proper, courts must consider the convenience of parties, convenience of witnesses, and the interests of justice. § 1404(a); *Fontem*, 2016 WL 7496721, at *2. These factors weigh strongly in favor of transfer.

### 1.  The Convenience of the Parties and the Ease of Access to

---

[1] In *TC Heartland v. Kraft Foods Group Brands LLC*, the Supreme Court held that venue in patent cases is governed by the patent venue statute, which provides that venue is only proper in the district where the defendant is incorporated or in the district where the defendant has a regular and established place of business and has committed acts of infringement. 137 S. Ct. 1514, 1519 (2017). The Federal Circuit clarified in *In re HTC* that venue for foreign corporations in patent cases should be analyzed under the general venue statute as opposed to the patent venue statute. *In re HTC*, 889 F.3d at 1356. In coming to this holding, the Federal Circuit reasoned that venue for foreign corporations should not be analyzed under the patent venue statute because it may result in a "venue gap" where some foreign corporations could not be sued in any judicial district. *Id.* That concern does not exist here because Pollard has a principal place of business in the Eastern District of Michigan where it manufactures the accused products. Thus, there is no "venue gap" for Pollard under the patent venue statute and an analysis under under that standard would result in the proper venue of this case being in the Eastern District of Michigan—not the Central District of California.

**Sources of Proof.**

"In patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity…This location is often where the development, research, and marketing of the accused product occurred." *Id.* at *3 (citations omitted). "This makes sense because in determining whether infringement has been established, the principal target of inquiry is the design and construction of the accused product.  The trier of fact will be asked to compare the claims in the patent with the accused product—examining its development, its components, its construction, and how it functions." *See Signal IP*, 2015 WL 5766170, at *4.

Further, "the bulk of the relevant evidence [in patent cases] usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).  Additionally, the location of any physical evidence representative of the accused product would weigh in favor of transfer to that location. *See In re TS Tech USA*, 551 F.3d at 1321 ("Because all of the physical evidence, including the headrests and the documentary evidence, are far more conveniently located near the Ohio venue, the district court erred in not weighing this factor in favor of transfer.")

Nanografix's infringement allegations are directed primarily to Pollard's conduct, and specifically toward the design, development, manufacture, marketing, and sale of the accused Scratch FX ticket.  (Dkt. 1 ¶¶ 27-38.)  Accordingly, the bulk of the witness testimony and evidence will come from Pollard's employees and documents, including witnesses employed at, documents maintained in, and physical evidence such as production lines in Ypsilanti, Michigan.  Pollard employs over 140 employees at its Ypsilanti facility that work in connection with the manufacture of Scratch FX tickets. (Ward Decl. ¶ 2.)  Pollard employees who are knowledgeable about the manufacture of Scratch FX tickets are located primarily in Ypsilanti, Michigan where those Scratch FX

6

tickets have been manufactured for distribution across the United States and elsewhere. (Ward Decl. ¶¶ 3-4.)  These witnesses, which Pollard expects to call to trial to support its non-infringement and other defenses and counterclaims, include the following:

- Raymond Darrell Ward — As the Vice President of Manufacturing, Mr. Ward oversees the overall manufacture of Pollard's Scratch FX tickets. (Ward Decl. ¶¶ 1, 3.)

- Scott Stalker — As the Production Manager, Mr. Stalker manages the press room production of the Scratch FX tickets as well as quality control of the tickets.  Mr. Stalker also was involved in the development of the manufacturing process for the Scratch FX tickets.  (Ward Decl. ¶ 4.)

- David Thomas — As the Pre-press Manager, Mr. Thomas manages the pre-press room preparation for the manufacture of the Scratch FX tickets. This includes the selection of inks and films that are applied to the Scratch FX tickets, the creation of the specific design that these inks and films will take on the tickets, and the conversion of these designs into printing plates for the press room.  (Ward Decl. ¶ 4.)

Documents relating to the manufacture of the Scratch FX tickets are located at the Ypsilanti facility as well.  (Ward Decl. ¶ 5.)  These documents include written procedures for running the printing press process in addition to quality control and forensic lab testing procedures.  (Ward Decl. ¶ 5.)  Additionally, in many patent cases, physical evidence is used during technology tutorials or demonstrations to aid the Court in understanding the technology.  The equipment used by Pollard to manufacture all Scratch FX tickets distributed or sold throughout the United States as of the time the complaint was filed in this case, is located at the Pollard facility in Ypsilanti, Michigan. (Ward Decl. ¶ 3.)  Some of this equipment is immovable from the Ypsilanti facility. (Ward Decl. ¶ 3.)  If a demonstration of the manufacturing process of the accused Scratch FX tickets is requested in connection with a technology tutorial, it would be far more convenient for a court in the Eastern District of Michigan to visit the Ypsilanti

facility to observe a demonstration of the manufacturing process as opposed to this Court.

Certain marketing and sales decisions concerning the Scratch FX tickets also are made out of the Ypsilanti facility, particularly by Donna Preziotti who is the Director of Sales & Marketing.  (Ward Decl. ¶ 4.)  Ms. Preziotti oversees Pollard's relationship with the Michigan Lottery and has been and is involved in the marketing and sale of the Scratch FX tickets to the Michigan Lottery, which is Pollard's largest customer of Scratch FX tickets.  (Ward Decl. ¶¶ 3-4.)  Documents concerning the number of Scratch FX tickets produced and shipping records of the Scratch FX tickets are also located at the Ypsilanti facility.  (Ward Decl. ¶ 5.)

Carol Dulle, who is the Costing Analyst and the person most knowledgeable about the financial aspects of the Scratch FX tickets, including profitability of the Scratch FX tickets that Pollard makes and sells in the United States, is located in Winnipeg, Canada.  (Ward Decl. ¶ 6.)  A few witnesses involved in the design of the Scratch FX tickets are also located in Winnipeg, and these witnesses periodically visit the Ypsilanti facility for various projects and other work-related matters.  (Ward Decl. ¶¶ 7-8.)  Although Winnipeg is not located within the Eastern District of Michigan, it is nearly twice as close to the Eastern District of Michigan than the Central District of California.  Pollard has no offices or employees located within any part of California, let alone within the Central District of California.[2]  (Ward Decl. ¶ 2.)  Further, Pollard does not expect any of its relevant documents or evidence related to the design, manufacture, marketing, or sales of the Scratch FX tickets to be located in any location other than Ypsilanti, Michigan or Winnipeg, Canada.  (Ward Decl. ¶ 9.)  Although Nanografix asserts that Pollard "made an offer of sale of the [Scratch FX tickets] in California" and "enjoys a lucrative contract with the California State Lottery," Pollard's

---

[2] Pollard does have a wholly-owned subsidiary in California, but that subsidiary's business operations are not related to the manufacture of instant scratch-off tickets, such as Scratch FX.

Scratch FX tickets are not currently available for sale to consumers in the California market, no tickets were sold to the California State lottery as of the time the complaint was filed in this case, and the majority of Pollard's U.S. sales of Scratch FX tickets occur in Michigan. (Ward Decl. ¶¶ 3, 10.) Irrespective of where Pollard sells and distributes its tickets across the United States, all of Pollard's relevant documents and evidence relating to its financials, sales, and marketing are located in either Ypsilanti or Winnipeg. (Ward Decl. ¶¶ 4-6, 9.)

Nanografix is a California corporation and its "principal place of business" is in San Diego, outside of this district. In its complaint, Plaintiff lists its "principal place of business" as 3830 Valley Centre Drive, Suite 705, San Diego, CA 92130. (Dkt. 1 at ¶ 7.) This address is the location of PostalAnnex, a private mailbox rental facility in San Diego that provides companies that do not have physical addresses with a street address so that they can have a "professional appearance...many people view a business with a street address as a long-term operation, not here today, gone tomorrow…A private mailbox rental at PostalAnnex in San Diego shows a street address for a professional appearance." (Ex. 3, PostalAnnex Website.) Nanografix's purported "principal place of business" is in reality just a mailbox used to give its company a "professional appearance." Pollard is not aware of and Nanografix has not asserted that it has any other non-principal places of business in California or the United States generally.

Although Nanografix's rental mailbox or "principal place of business" is located closer to the Central District of California than to the Eastern District of Michigan, the only relevant Nanografix witness that it has identified is its President (and named inventor of the asserted patent) Dan Lieberman, who supposedly lives in California. (Ex. 6, 10/15/18 Email from J. Bisbikis to R. Levine.) In opposing transfer, Nanografix may allege that its sources of proof and relevant documents are located in San Diego, California at its "principal place of business." Even if true, as courts have recognized, the bulk of the relevant evidence in patent infringement actions is in the possession of the accused infringer. *In re Genentech*, 566 F.3d at 1345. Any evidence that

Nanografix or Dan Lieberman has in San Diego (which is closer to this forum than the Eastern District of Michigan), is outweighed by the vast amount of relevant evidence that Pollard will need to produce in this action.

Further, the alleged invention was developed in Santa Maria La Ribera, Mexico, near Mexico City, where the inventors of the patent were located at the time of the invention.   (Dkt. 1-1.)   This location is also associated with a company called Hologramas de Mexico, which "has been manufacturing holograms since 1984," and which Dan Lieberman also owns.  (Ex. 4, Hologramas de Mexico Website; Ex. 5, HoloWebs Article.)  Any documents related to the conception and reduction to practice as well as the manufacture of any products that allegedly embody the asserted patent, if any, that Nanografix sells are presumably located at this location near Mexico City, which is outside the boundaries of the Central District of California and is nearly as far from the Central District of California (approx. 1,800 miles) as the Eastern District of Michigan (approx. 2,300 miles).

Although Nanografix likely will assert that its selection of this forum should be entitled to deference, "[a] plaintiff's choice of venue is entitled to limited deference 'when the plaintiff elects to pursue a case outside its home forum,' in a venue with little connection to the operative facts of the litigation." *Fontem*, 2016 WL 7496721, at *4; *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties of subject matter, [the plaintiff's] choice is entitled to only minimal consideration.").   Neither party has any contacts with this District.  "The center of gravity, based on the 'hub of activity' around the development, research, and marketing of the accused products," weighs in favor of transfer to the Eastern District of Michigan.  *Fontem*, 2016 WL 7496721, at *4.

## 2.    The Convenience Of Witnesses And Availability Of Compulsory Process.

The convenience of witnesses, which some courts call "the most important factor" to be considered on a 1404(a) motion, also strongly favors transfer to the Eastern District of Michigan.  *See Ezieme v. Ward Int'l. Trading, Inc.*, No. 08-cv-6748, 2009 WL 2818394, at *4 (C.D. Cal. Aug. 31, 2009).  When there are no witnesses in the transferor venue, transfer to a venue with some witnesses is proper, even if that venue does not have subpoena power over all witnesses.  *In re Hoffman La-Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009).

The ability to "compel the testimony of important witnesses is an important consideration in transfer motions."  *Managed Protected Servs., Inc. v. Credo Petroleum Corp.*, No. CV-12-00080, 2012 WL 3264515, at *3 (D. Ariz. Aug. 9, 2012).  As discussed above, the vast majority of the witnesses with knowledge concerning the manufacture, development, and marketing of the Scratch FX tickets are located in Ypsilanti, Michigan while a handful of other relevant witnesses are located in Winnipeg, Canada. (Ward Decl. ¶¶ 4, 6-7.)  All of the witnesses in Ypsilanti would be subject to the subpoena power of the Eastern District of Michigan.

In addition to the named inventor and President of Nanografix, Dan Lieberman, Plaintiff may also likely identify Ramon Bautista Perez-Salazar (another inventor listed on the asserted patent) as a relevant witness.  According to the face of the asserted patent, Mr. Perez-Salazar is located in Santa Maria La Ribera, Mexico. (Dkt. 1-1.)  Santa Maria La Ribera is approximately 2,300 miles from the Eastern District of Michigan and 1,800 miles from the Central District of California.  Although the Central District of California is approximately 500 miles closer to Mr. Perez-Salazar than the Eastern District of Michigan, this difference in distance is outweighed by the vast number of Pollard witnesses that would be required to travel to California if the litigation were to remain in this district.  For Mr. Perez-Salazar, the Central District of California and the Eastern District of Michigan are equally inconvenient.  *In re*

1   *Genentech*, 566 F.3d at at 1344 (discounting the importance of witnesses who "will be

2   required to travel a significant distance no matter where they testify.")  Further, Mr.

3   Perez-Salazar would not be subject to the subpoena power of either forum.

4         No relevant witnesses are located in this forum.  Consequently, transfer to a

5   forum with a vast majority of the witnesses is proper.

6                   **3.    The Differences In The Costs of Litigation In The Two**
                            **Forums.**
7

8         The comparative cost imposed on the witnesses for attendance, including travel,

9   lodging, and lost productivity, weigh in favor of transfer.  "It goes without saying that

10  additional distance from home means additional travel time; additional travel time

11  increases the probability for meal and lodging expenses; and additional travel time with

12  overnight stays increases the time which these fact witnesses must be away from their

13  regular employment."  *In re TS Tech USA Corp.*, 551 F.3d at 1319 (noting that the cost

14  of litigation favored transfer to Ohio where all of the key witnesses were located in

15  Ohio, Michigan, or Canada instead of Texas where the case was filed); *see also Signal*

16  *IP*, 2015 WL 5766170, at *5 ("Defendants can be expected to have more witnesses …

17  because the factual inquiries in the case are focused on Defendants' activities.");

18  *Pralinsky v. Mut. of Omaha Ins.*, No. 08-cv-03191, 2008 WL 4532563, at *4 (N.D. Cal.

19  Oct. 9, 2008) (favoring transfer under the cost of litigation factor where the majority of

20  defendants' witnesses were located in the transferee forum and plaintiff and its

21  witnesses were not located in the transferor forum).

22        As discussed above, Pollard's witnesses are primarily located in either Ypsilanti,

23  Michigan or Winnipeg, Canada.  (Ward Decl. ¶ 4, 6-7, 9.)  Ypsilanti is located within

24  the Eastern District of Michigan.  Therefore, the cost of witnesses attending from

25  Ypsilanti is negligible, with low travel and lodging expenses, as well as minimal loss

26  of productivity.  Winnipeg is nearly twice as close to the Eastern District of Michigan

27  as compared to the Central District of California.  The cost of witnesses attending from

28  Winnipeg will be less because it is a shorter distance to be traveled and since there are

1    Pollard offices in Ypsilanti, those witnesses will still be able to be productive when not
2    actively participating in trial activities.  (Ward Decl. ¶ 8.)

3         Although Nanografix's President is located in California, San Diego is
4    approximately 120 miles from Los Angeles.  This distance would still likely require
5    lodging and meal expenses, as well as a loss of productivity.  The main difference for
6    Nanografix would be the difference in travel costs between the two districts.  To date,
7    however, Nanografix has only identified one witness who would need to travel for trial
8    while Pollard would have several more.  Additionally, even if Plaintiff calls the other
9    named inventor, Ramon Bautista Perez-Salazar, travel, lodging, and loss of productivity
10   would result from having to testify in either district.  Further, Plaintiff has not identified
11   any witnesses that are located within the Central District of California.

12        This factor weighs in favor of transfer to the Eastern District of Michigan,
13   because the number of persons required to travel and the expenses required for litigation
14   in the Central District of California far exceed the travel expenses that would be
15   required for litigation in the Eastern District of Michigan.

16        **4.    The Contacts Relating to the Plaintiff's Cause of Action In The**
17        **Chosen Forum.**

18        This factor also favors transfer to the Eastern District of Michigan. "[T]he sale of
19   an accused product offered nationwide does not give rise to a substantial interest in any
20   single venue." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *see also In*
21   *re TS Tech*, 551 F.3d at 1321 (finding the fact that accused products can be found in the
22   plaintiff's chosen forum does not weigh against transfer where the accused products are
23   found in every judicial district).

24        Pollard's Scratch FX tickets are sold throughout the United States to several
25   different state lotteries, with the greatest sales occurring to the Michigan State Lottery.
26   (Ward Decl. ¶ 3.)  Pollard's Scratch FX tickets are not currently available to consumers
27   in California, no Scratch FX tickets had been sold to the California State Lottery as of
28   the filing of the complaint in this case (Ward Decl. ¶ 10), and this forum does not have

13

any substantial interest in this lawsuit. *Nikola*, at *1 n.1 (attached as Ex. 2); *see also EMC Corp.*, 501 F. App'x at 976. Regardless, the mere sale or offer for sale of the accused Scratch FX tickets to the California Lottery in this District is insufficient to give this forum a substantial interest in this litigation that would outweigh the incontrovertibly greater contacts that the Eastern District of Michigan has regarding this dispute. *See TS Tech*, 551 F.3d at 1321.

### 5. Familiarity With Governing Law.

This factor is neutral. The district court in the Eastern District of Michigan is equally capable of applying the relevant law to the current dispute. *See Qurio Holdings, Inc. v. DISH Network Corp.*, No. 15-CV-00930, 2015 WL 4148962, at *6 (N.D. Cal. July 9, 2015) ("Patent claims are governed by federal law, with which all federal courts are familiar. Accordingly, the Court finds that this factor is neutral." (internal citation omitted)).

### 6. Interests of Justice.

The "interests of justice" include factors such as "administrative difficulties flowing from court congestion; [and] the local interest in having localized controversies decided at home." *Maatuk v. Emerson Elec., Inc.*, CV 16-6177-GW(JPRx), 2016 WL 10100271, at *10 (C.D. Cal. Nov. 21, 2016). There are no significant efficiencies achieved by keeping this dispute in this District. To date, only the complaint and answer have been filed. The interests of justice are not served by retaining this dispute in this District, which has no meaningful contacts with this litigation, simply because Plaintiff is located in a bordering district and chose this forum.

## V. CONCLUSION

On balance, the factors strongly support transfer of this case to the Eastern District of Michigan. A substantial amount of the evidence and witnesses are located in that forum and near that forum while none are located in this venue. For the foregoing reasons, Pollard respectfully requests the Court transfer this case to the United States District Court for the Eastern District of Michigan.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  November 6, 2018

Respectfully submitted,
Kirkland & Ellis LLP

By:  */s/ Lauren Schweitzer*
Lauren Schweitzer (SBN 301654)
333 South Hope Street
29th Floor
Los Angeles, CA 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
lauren.schweitzer@kirkland.com

Russell E. Levine, P.C. (*pro hac vice* pending)
Kourtney Baltzer (*pro hac vice* pending)
300 North LaSalle Street
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
russell.levine@kirkland.com
kourtney.baltzer@kirkland.com

*Attorneys for Defendant Pollard Banknote Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

By:   */s/ Lauren Schweitzer*
      Lauren Schweitzer

1

## CERTIFICATE OF CONFERENCE

2

This motion is made following the conference of counsel pursuant to L.R. 7-3

3

which took place on October 11, 2018.

4

5

By:   */s/ Russell E. Levine, P.C.*

Russell E. Levine, P.C. (*pro hac vice*

6

pending)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28