**KIRKLAND & ELLIS LLP**
Lauren Schweitzer (State Bar No. 301654)
lauren.schweitzer@kirkland.com
333 South Hope Street
29th Floor
Los Angeles, CA 90071
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500

**KIRKLAND & ELLIS LLP**
Russell E. Levine, P.C. (*pro hac vice*)
rlevine@kirkland.com
Kourtney Baltzer (*pro hac vice*)
Kourtney.baltzer@kirkland.com
300 N LaSalle
Chicago, IL 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200

*Attorneys for Defendant Pollard Banknote Limited*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| NANOGRAFIX CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>POLLARD BANKNOTE LIMITED, a Canadian corporation,<br><br>Defendant. | CASE NO. 2:18-cv-06735<br><br>**DEFENDANT POLLARD BANKNOTE LIMITED'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER TO THE EASTERN DISTRICT OF MICHIGAN PURSUANT TO 28 U.S.C.§ 1404(a)**<br><br>Judge:          Hon. George H. Wu<br>Hearing Date:   December 17, 2018<br>Hearing Time:   8:30 a.m.<br>Courtroom:      9D |

# **TABLE OF CONTENTS**

**Page**

I.   NANOGRAFIX DOES NOT REFUTE THAT THE RELEVANT FACTORS SUPPORT TRANSFER ................................................................. 1

II.  THE COURT SHOULD CONSIDER THE FACTS AS THEY EXISTED AT THE TIME THE COMPLAINT WAS FILED ......................................... 2

III. REGARDLESS OF WHETHER THIS COURT ANALYZES THE TRANSFER FACTORS AT THE TIME THE COMPLAINT WAS FILED OR NOW, THE FACTORS WEIGH IN FAVOR OF TRANSFER ................................................................................................... 5

    A.   The "Center of Gravity" and the Convenience of the Parties and Witnesses All Favor Transfer to the Eastern District of Michigan ....... 6

        1.   Nanografix Manufactures Irrelevant Contacts with the State of California ................................................................................ 6

        2.   Nanografix Sidesteps the Evidence Indicating That Ypsilanti Is the Center of Gravity of the Accused Activity ...................... 8

    B.   The Other Factors Nanografix Points To Also Weigh in Favor of Transfer or Are Otherwise Neutral to the Analysis ........................... 12

        1.   There Are No Agreements Relevant to the Court's Transfer Analysis .................................................................................... 12

        2.   Nanografix's Choice of Forum Should Be Entitled to Limited Deference. ................................................................................. 12

        3.   There Is Relatively Greater Ease of Access to Sources of Proof in the Eastern District of Michigan. ................................. 13

        4.   The Eastern District of Michigan Has A Stronger Local Interest ..................................................................................... 14

        5.   Relative Court Congestion and Time to Trial Is Neutral. ........ 15

i

1

IV.   CONCLUSION ..............................................................................................15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,

    937 F. Supp. 2d 867 (E.D. Tex. 2013) ................................................... 14

*Am. Vehicular Sci. LLC v. Hyundai Motor Co.*,

    Nos. 15-01389-CJC(JCGx), 15-01390-CJC(JCGx), 15-01391-
    CJC(JCGx), 15-01392-CJC(JCGx), 2016 WL 6306061 (C.D. Cal.
    Apr. 27, 2016)......................................................................................... 12

*Amazon.com v. Cendant Corp.*,

    404 F. Supp. 2d 1256 (W.D. Wash. 2005) ............................................ 10

*American GNC Corp. v. GoPro, Inc.*,

    No. 18-cv-00968, 2018 WL 6074395 (S.D. Cal. Nov. 6, 2018) ..................... *passim*

*Arete Power, Inc. v. Beacon Power Corp.*,

    No. C 07-5167 WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ..................... 10

*B&B Hardware, Inc. v. Hargis Indus.*,

    No. CV 06-4871-PA (SSx), 2006 WL 4568798 (C.D. Cal. Nov. 30,
    2006) ...................................................................................................... 10

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*,

    No. CV 06-1190-JFW, 2006 WL 1582091 (C.D. Cal. June 6, 2006)...................... 9

*Cascades Projection LLC v. NEC Display Solutions of Am., Inc.*,

    No. CV 15-00273 SJO, 2015 WL 12698454 (C.D. Cal. June 5, 2015) ................. 12

*Clark v. Sprint Spectrum L.P.*,

    No. C 10-03625 SI, 2010 WL 5173872 (N.D. Cal. Dec. 15, 2010).......................... 3

*Dexcom, Inc. v. AgaMatrix, Inc.*,

    No. 16-cv-05947 SJO, 2017 WL 3433543 (C.D. Cal. Feb. 3, 2017) ..................... 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Digitech Image Technologies, LLC v. Leica Camera AG*,
   No. 12-01677, 2012 WL 6062749 (C.D. Cal. Dec. 5, 2012) ................................. 11

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ........................................................................ 3, 4

*In re Fine Paper Antitrust Litig.*,
   685 F.2d 810 (3d Cir. 1982) ...................................................................................... 5

*Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*,
   No. CV 16-2286, 2016 WL 7496721 (C.D. Cal. Aug. 8, 2016) ...................... 12, 13

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ................................................................................ 15

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 13, 15

*Hangzhou Chic Intelligent Tech. Co. v. Swagway, LLC*,
   No. 16-cv-04804, 2017 WL 1425915 (N.D. Cal. Apr. 21, 2017) .......................... 14

*Hoffman v. Blaski*,
   363 U.S. 335 (1960).................................................................................................... 4

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ......................................................................... 6, 14

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .................................................................................. 12

*Miracle v. N.Y.P. Holdings, Inc.*,
   87 F. Supp. 2d 1060 (D. Haw. 2000)....................................................................... 11

*Nikola Corp. v. Tesla Inc.*,
   No. CV-18-01344-PHX-JAS (BPV), (D. Ariz. Oct. 29, 2018)................................. 3

*Qurio Holdings, Inc. v. DISH Network Corp.*,
   No. 15-CV-00930, 2015 WL 4148962 (N.D. Cal. July 9, 2015).......................... 4, 5

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

<u>Page(s)</u>

*STX, Inc. v. Trik Stick, Inc.*,

   708 F. Supp. 1551 (N.D. Cal. 1988).........................................................................11

*Technograph Printed Circuits, Ltd. v. Packard Bell Elecs. Corp.*,

   290 F. Supp. 308 (C.D. Cal. 1968).............................................................................3

*Ventress v. Japan Airlines*,

   486 F.3d 1111 (9th Cir. 2007) ...................................................................................3

*Vertical Computer Systems, Inc. v. LG Elecs. MobileComm U.S.A., Inc.*,

   No. 2:10-cv-490-JRG, 2013 WL 2241947 (E.D. Tex. May 21, 2013) ..................3, 4

*WP Banquet, LLC v. Target Corp.*,

   No. LA CV16-02082, 2016 WL 9450448 (C.D. Cal. Dec. 15, 2016) .....................10

**Statutes**

28 U.S.C. § 1404(a) .....................................................................................................3, 15

# I. NANOGRAFIX DOES NOT REFUTE THAT THE RELEVANT FACTORS SUPPORT TRANSFER

In its response to Pollard's motion to transfer, Nanografix argues that it and Pollard have contacts with the state of California. But, the issue isn't whether the parties merely have contacts with the state (as might be relevant if Pollard had moved to dismiss for lack of personal jurisdiction). The issue is whether the case should be transferred to the Eastern District of Michigan on grounds of convenience, particularly since the center of activity relating to the accused products, is in the Eastern District of Michigan. Although Nanografix points to Pollard's prior history of selling lottery tickets in the state of California, none of those tickets are accused of infringement in this case. Nanografix also explains that it has a handful of employees and independent contractors in California. Notably, however, Nanografix does not contend that *any* of these employees or contractors will be witnesses in this litigation or that any will be required to attend trial other than its President, Daniel Lieberman. Nanografix points to a subsidiary of Pollard that is located in California as showing that Pollard has additional contacts with the state. But the Pollard subsidiary in California plays no role in the manufacture, design, marketing or sale of Pollard's Scratch FX tickets and no employees from that company have testimony that is relevant to this case. Nanografix also suggests that the court should look to where "relevant" agreements were negotiated and executed, and Nanografix points to Pollard's agreement with the California Lottery. But this factor is wholly irrelevant in non-contract dispute cases. Instead of actually analyzing the relevant factors for transfer, Nanografix points to every mention of the State of California that it can in the hopes that something will stick this case in this district.

Nanografix also argues that this Court should look to facts that have come about since the filing of the complaint in this action, ignoring and overlooking clear Federal Circuit and Supreme Court precedent indicating that district courts should analyze the facts that existed at the time the complaint was filed. And this precedent makes sense—

1

if facts arising after the time of the complaint were considered, a court would be dealing with an ever-changing series of facts and face several motions to transfer each time a defendant moves its business or starts a new product line. Further, defendants would then be able to game the system by moving their relevant witnesses and documents after a litigation has been filed to try to establish convenience in a different desired forum.

But regardless of whether this Court considers the facts as they existed at the time the complaint was filed, or facts that have arisen after too, the center of gravity of the accused activity in this case was and remains in the Eastern District of Michigan, and thus this case should be transferred to that District. Nanografix overlooks that all of Pollard's Scratch FX tickets sold in all states including Michigan (Pollard's largest customer of Scratch FX tickets) and besides Pollard's recent tickets in California, were manufactured in Ypsilanti, Michigan, where Pollard employs over 140 employees that are involved, in some capacity, with the manufacture, distribution, and/or sale of Pollard's Scratch FX tickets. The Vice President of Manufacturing of Pollard, who oversees the manufacture of Scratch FX tickets, is located in Ypsilanti, Michigan and so is Pollard's Production Manager, who was involved in the development of the manufacturing process of the Scratch FX tickets. Although some relevant witnesses and documents are also located in Winnipeg, Canada, Winnipeg is nearly twice as close to the Eastern District of Michigan than the Central District of California. Importantly, no documentation related to or witnesses knowledgeable about the manufacture, design, marketing, or sale of Pollard's Scratch FX tickets are located within the State of California; all such documents and witnesses are located in either Ypsilanti, Michigan or Winnipeg, Canada. The balance of factors weigh in favor of transfer to the Eastern District of Michigan.

## II.   THE COURT SHOULD CONSIDER THE FACTS AS THEY EXISTED AT THE TIME THE COMPLAINT WAS FILED

In determining whether to transfer a case, a court should consider the relevant factors based on the facts that existed at the time the complaint was filed. Nanografix

attempts to argue that this standard is "clearly erroneous" by misconstruing the holdings of several cases, even in the face of a report and recommendation from a magistrate judge within the 9th Circuit that explicitly states that "for purposes of determining whether to transfer, the Court considers the facts that existed at the time the case was brought." *Nikola Corp. v. Tesla Inc.*, No. CV-18-01344-PHX-JAS (BPV), at *1 n. 1 (D. Ariz. Oct. 29, 2018). Nanografix incorrectly criticizes the *Nikola* court's reliance on *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) and *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) for this proposition. (*See* Dkt. 39-1 at 12-13.)

Contrary to Nanografix's assertions, the district court in *Ventress* evaluated "the facts alleged in the complaint" and not after the complaint was filed, and concluded that transfer was proper. 486 F.3d at 1118-19. The Ninth Circuit affirmed, finding that the district court was within its discretion to disregard facts developed after the transfer order was issued. *Id.* While the court did not explicitly state that the venue analysis is based on the facts existing when suit was instituted, *Ventress* is consistent with district court opinions that have. *See, e.g.*, *Technograph Printed Circuits, Ltd. v. Packard Bell Elecs. Corp.*, 290 F. Supp. 308, 326 (C.D. Cal. 1968) ("[V]enue, i.e. where (the action) might have been brought, is to be determined as of the time of the filing of the actions"); *Vertical Computer Systems, Inc. v. LG Elecs. MobileComm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) ("Even if the situs of the bulk of the accused products have moved since this suit was filed, precedent dictates that motions to transfer venue are not decided on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed"); *Clark v. Sprint Spectrum L.P.*, No. C 10-03625 SI, 2010 WL 5173872, at *2 n.1 (N.D. Cal. Dec. 15, 2010) (granting a motion to transfer venue under 28 U.S.C. § 1404(a), recognizing that "[f]or the purpose of venue, however, residence is determined at the time the action is filed" when assessing a party's contacts with a specific forum).

1    Nanografix also challenges the Federal Circuit's instruction, relying on Supreme

2    Court precedent, that a district court must evaluate the factors relating to transfer as they

3    existed when the suit was first filed without giving weight to subsequent developments.

4    (Dkt. 39-1 at 12-13.)   In *In re EMC Corp.*, the Federal Circuit explicitly stated that,

5    "[m]otions to transfer venue are to be decided based on 'the situation which existed

6    when the suit was instituted.'"   501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting

7    *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).   Relying on this precedent, the Federal

8    Circuit denied a petition for mandamus to overturn a district court's denial of a motion

9    to transfer where the district court was handling other cases involving the same patents

10   and technology ***at the time the complaint was filed***, which favored denial because of

11   judicial economy reasons.   *Id.*   Even though the district court subsequently dismissed

12   these other suits, the Federal Circuit indicated that this was "not relevant to the venue

13   inquiry" because those dismissals occurred after the original complaint was filed and

14   the "relevant inquiry is the state of affairs at the time 'when suit was instituted.'"   *Id.*

15   (quoting *Hoffman*, 363 U.S. at 343).   Both Federal Circuit and Supreme Court precedent

16   clearly instruct that the inquiry should occur at the time the complaint was filed.   And

17   this precedent makes sense—otherwise, a court may face a new transfer request several

18   times throughout a litigation every time a business or product line is relocated.   *Vertical*

19   *Computer Systems,* 2013 WL 2241947 at *3 (noting that transfer motions cannot be

20   decided based on continually changing facts but instead "should be evaluated on the

21   situation which existed when the suit was filed.   Otherwise, given the constantly

22   evolving commercial landscape, the Court is likely to face a new transfer request every

23   time a business or product line is relocated.")   Further, if facts occurring after the

24   complaint was filed were considered, a defendant could attempt to game the system by

25   moving its relevant witnesses and documents to a more preferred forum.

26   Nanografix also cites two cases in support of its assertion that facts arising after

27   the complaint was filed should be considered in the transfer analysis.   Neither of those

28   cases supports Nanografix's position.   Nanografix relies on *Quirio Holdings, Inc. v.*

4

*DISH Network Corp.*, an inapposite, fact-specific case involving a plaintiff's motion to retransfer to a third district where suit had not previously been brought after a prior transfer of the same matter from another district. No. 15-CV-00930, 2015 WL 4148962, at *3 (N.D. Cal. July 9, 2015).  In retransfer cases, a court must make a threshold determination whether there have been "changed circumstances" to justify transfer and discourage forum shopping, necessitating review of facts after suit had been instituted. *Id.*  Thus, *Qurio* is inapplicable for the analysis here.  Nanografix also cites to a Third Circuit case, *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 819 (3d Cir. 1982).  But in that case, the district court was addressing venue after certain defendants in the action (who would have otherwise made transfer of venue improper) dropped out of the litigation and could no longer object to transfer.  *Id.* (recognizing that "a party's settlement of his portion of the action cures any objection to venue in the transferee district with respect to that party").  Here, Nanografix and Pollard were the only two parties to this litigation at the time of filing and remain so now.

As Pollard explained in its opening memorandum and as reiterated above, this Court should consider the facts that existed at the time the complaint was filed in determining whether to transfer this case to the Eastern District of Michigan. Nanografix's desire to use a different standard, and one that has been rejected by numerous appellate and district courts, should be disregarded.

## III.   REGARDLESS OF WHETHER THIS COURT ANALYZES THE TRANSFER FACTORS AT THE TIME THE COMPLAINT WAS FILED OR NOW, THE FACTORS WEIGH IN FAVOR OF TRANSFER

Irrespective of whether this Court evaluates the transfer factors in view of the facts that existed at the time the complaint was filed or in view of subsequent facts as well, under either scenario, the factors weigh in favor of transfer to the Eastern District of Michigan where the hub of the accused infringement and production of the Scratch FX tickets occurs.

5

**A.    The "Center of Gravity" and the Convenience of the Parties and Witnesses All Favor Transfer to the Eastern District of Michigan**

**1.    Nanografix Manufactures Irrelevant Contacts with the State of California**

Nanografix argues that several "contacts" between Pollard and the state of California prevent transfer of this case.  Nanografix points to the fact that Pollard has "had a relationship with the California Lottery dating back to 1997," that some of Pollard's games have accounted for "more than 20% of the California Lottery's total instant ticket sales" and that particular Pollard games throughout the years (including Crossword, Bingo, Tripling Crossword, and Deluxe 7's Playbook) have generated certain amounts in sales in California. (Dkt. 39-1 at 7-8.)  But none of these "contacts" are relevant to the issues in this case.  As Nanografix recognizes, Pollard did not start selling Scratch FX tickets to the California Lottery until November 2018 (Dkt. 39-1 at 10), which was well after the complaint was filed in this case.  The Crossword, Bingo, Tripling Crossword, and Deluxe 7's Playbook tickets that were previously sold in California (Dkt. 39-1 at 7-8) are not accused Scratch FX tickets and any sales of those tickets in California or elsewhere are completely irrelevant to the issues in this case.  And even if this Court were to consider the fact that Scratch FX tickets are now being sold in California, as Nanografix recognizes, none of those Scratch FX tickets are manufactured in California (*see* Dkt. 39-1 at 10) and none of Pollard's witnesses relating to those Scratch FX tickets are located in California.  (Dkt. 26-2 at ¶ 9.)  Moreover, Scratch FX tickets are sold in at least Michigan, Maryland, Texas, Iowa, Idaho, Arizona, and Virginia too. (Dkt. 39-1 at 9, 17.)  "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also American GNC Corp. v. GoPro, Inc.*, No. 18-cv-00968, 2018 WL 6074395, at *20 (S.D. Cal. Nov. 6, 2018).  The Central District of California does not have a substantial interest in this case based on Pollard's sales of Scratch FX tickets in this state.

1    Nanografix alleges that Pollard has additional contacts with California by having
2    a wholly-owned subsidiary called Diamond Game Enterprises, whose headquarters is
3    in California.   (Dkt. 39-1 at 8.) Nanografix also alleges that "Pollard has a
4    manufacturing facility in Chatsworth, California" and that Pollard has employees in
5    Chatsworth, California as well as other various locations beyond Ypsilanti, Michigan
6    and Winnipeg, Canada. (Dkt. 39-1 at 7-9.) But these supposed "contacts" are irrelevant
7    to this case and the transfer analysis.  Diamond Game Enterprises is a separate company
8    from Pollard Banknote Limited and it does not have any involvement in the
9    manufacture, design, marketing, or sale of Scratch FX tickets. (Declaration of Kourtney
10   Baltzer ("Baltzer Decl."), ¶ 4, Ex. 1 (showing Diamond Game Enterprises' lottery
11   products, which does not include Scratch FX)).   The manufacturing facility and
12   employees in Chatsworth, California that Nanografix points to are the manufacturing
13   facility and employees of Diamond Game Enterprises.  (*See* Baltzer Decl., ¶ 4, Ex. 1.)
14   None of the employees or documents from Diamond Game Enterprises will be relevant
15   to this litigation.  As Raymond Darrell Ward, the Vice President of Manufacturing of
16   Pollard, noted in his declaration, he is not aware of any documentation related to or
17   witnesses knowledgeable about the manufacture, design, marketing, or sale of Pollard's
18   Scratch FX tickets that are located outside of either Ypsilanti, Michigan or Winnipeg,
19   Canada and certainly not in California.  (Dkt. 26-2 at ¶ 9.)
20          Even the contacts that Nanografix alleges its own company has with the state of
21   California, though not this specific forum, are tenuous.  Although Nanografix alleges
22   that it has five employees in the state of California as well as two independent
23   contractors, Nanografix does not contend that ***any*** of these employees would have
24   testimony relevant to this litigation or would be required to attend trial other than its
25   President Daniel Lieberman. (*See* Dkt. 39-1 at 5-7.)  Further, the only documentation
26   that Nanografix contends to be in the state of California are the '494 Patent records in
27   San Diego. (Dkt. 39-1 at 6.)  Although Nanografix contends that it "stores" and "sells"
28   products in California, it notably says nothing regarding where these products are

manufactured, nor does Nanografix assert that such products practice the alleged invention of the '494 Patent. (Dkt. 39-1 at 4-5.) Presumably, these products are manufactured at Lieberman's Hologramas de Mexico facility near Mexico City, which is nearly as far from the Central District of California as the Eastern District of Michigan. If any Nanografix products allegedly embody the invention of the asserted patent or allegedly compete with Pollard's products, documentation and witness testimony from Mexico City will likely be required. This Court should see Nanografix's "principal place of business" in San Diego for what it really is: nothing more than a shell for its Mexican operation, and real hub, to distribute products throughout the United States. Nanografix's contacts with California that are relevant for this litigation are in reality minimal—particularly in comparison to Pollard's contacts with the Eastern District of Michigan.

### 2. Nanografix Sidesteps the Evidence Indicating That Ypsilanti Is the Center of Gravity of the Accused Activity

Nanografix attempts to lessen the significance of the evidence pointing to Ypsilanti, Michigan as the center of gravity of the accused activity in this case. Nanografix suggests that neither Pollard nor Mr. Ward indicated anything about a "majority" of Pollard's witnesses being located in Ypsilanti. (Dkt. 39-1 at 16.) As Mr. Ward indicated in his declaration, as of the time of the filing of the complaint in this action, *all* Scratch FX tickets sold in the United States market were manufactured in Pollard's Ypsilanti facility. (Dkt. 26-2 at ¶ 3.) This includes tickets sold in *all* of the U.S. states that Pollard had been selling at that time, including the states that Nanografix recognized in its opposition: Michigan, Virginia, Texas, Maryland, Arizona, Iowa, and Idaho. (Dkt. 39-1 at 9, 17.) Thus, the witnesses Mr. Ward identified in the Ypsilanti facility as being knowledgeable about the manufacture of the Scratch FX tickets have been involved in the manufacture of *all* Scratch FX tickets distributed throughout the United States as of the time of the filing of the complaint in this action. The Pollard witnesses knowledgeable about the manufacture of the Scratch FX tickets, including

Mr. Ward as the Vice President of Manufacturing of Pollard, are located in Ypsilanti, Michigan where all Scratch FX tickets have historically been made and where over 140 Pollard employees are involved, in some capacity, with the manufacture, distribution, and/or sale of the Scratch FX tickets.  (Dkt. 26-2 at ¶¶ 1-2.)  These witnesses in Ypsilanti also include Mr. Scott Stalker, who was involved in the development of the manufacturing process for the Scratch FX tickets as well as Ms. Donna Preziotti, who oversees Pollard's relationship with respect to the marketing and sale of the Scratch FX tickets to the Michigan Lottery, Pollard's largest customer of Scratch FX tickets.  (Dkt. 26-2 at ¶ 4.)  Transfer is appropriate when "the party witnesses who are expected to provide relevant testimony regarding the design, function and operation of Defendant's allegedly infringing products…work and reside" in the transferee forum.  *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, No. CV 06-1190-JFW (SSx), 2006 WL 1582091, at *2 (C.D. Cal. June 6, 2006).  Ypsilanti is clearly the "center of gravity" of the accused activity in this case as opposed to the Central District of California.

Nanografix makes much ado about nothing with respect to the tickets Pollard recently started selling to the California Lottery and that are manufactured in Canada. As explained above, in analyzing the transfer factors, this Court should look at the facts that existed as of the time of the filing of the complaint.  At that time, all Scratch FX tickets for the U.S. market were being manufactured in Ypsilanti, Michigan.  (Dkt. 26-2 at ¶ 3.)  But even if the Court considers the fact that these recent California tickets are being manufactured in Canada, as Mr. Ward already explained in his declaration, some relevant witnesses and documentation are indeed located in Winnipeg, Canada.  (Dkt. 26-2 at ¶¶ 6-7.)  Winnipeg, Canada is nearly twice as close to the Eastern District of Michigan than the Central District of California.  Importantly, as Mr. Ward noted, he is unaware of any documentation related to or witnesses knowledgeable about the manufacture, design, marketing, or sale of Pollard's Scratch FX tickets that are located outside of either Ypsilanti, Michigan or Winnipeg, Canada.  (Dkt. 26-2 at ¶ 9.)

"The location of the alleged infringer's principal place of business…is often the critical and controlling consideration in adjudicating a motion to transfer venue." *American GNC*, 2018 WL 6074395, at *16.  In a patent infringement action, "the parties' convenience will be served by facilitated access to the witnesses and documents that disclose the history of [the defendant's] relevant products and the design and development of the devices that plaintiff accuses of infringement."  *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *6 (N.D. Cal. Feb. 22, 2008) (citing *B&B Hardware, Inc. v. Hargis Indus.*, No. CV 06-4871-PA (SSx), 2006 WL 4568798 at *4 (C.D. Cal. Nov. 30, 2006).  Thus, "the district court ought to be *as close as possible* to the milieu of the infringing device and the hub of activity centered around its production." *American GNC*, 2018 WL 6074395, at *16 (emphasis added) (quoting *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005).  Here, the Eastern District of Michigan is where the milieu of the infringing device and the hub of activity centered around its production is located and is where this case should be transferred.

Nanografix repeatedly alleges throughout its response that transfer should not be granted because Nanografix is a small company compared to Pollard and that it would be inconvenienced if its President and its Los Angeles attorney needed travel to the Eastern District of Michigan for hearings and trial. (Dkt. 39-1 at 6, 19-20.) Nanografix, however, cites no authority for the proposition that location of its *counsel* should be considered in the transfer inquiry.  In fact, the "location of counsel is *not* a relevant consideration in the transfer analysis." *WP Banquet, LLC v. Target Corp.*, No. LA CV16-02082 JAK (JRPx), 2016 WL 9450448, at *9 (C.D. Cal. Dec. 15, 2016) (emphasis added).  And even if this factor were relevant, Nanografix overlooks the fact that it has two counsel involved in this case that are located in *Chicago* (which is substantially closer to the Eastern District of Michigan) and just one counsel located in Los Angeles.  Its two Chicago attorneys will need to fly to Los Angeles for all hearings and trial anyway, likely accumulating *more* costs for Nanografix than if this case were

transferred to the Eastern District of Michigan where its two Chicago counsel could drive to hearings and trial while its single Los Angeles attorney could fly.

Although the relative means of the parties can be considered in the transfer analysis, the cases Nanografix cites for this proposition are inapposite to the situation at hand.  In *Digitech Image Technologies, LLC v. Leica Camera AG*, the Court denied a motion to transfer from the Central District of California to the District of New Jersey and noted that because the defendants were larger businesses than plaintiff, this weighed "slightly in favor" of denial of transfer.  No. 12-01677, 2012 WL 6062749, at *2 (C.D. Cal. Dec. 5, 2012).  However, in coming to its overall decision to deny transfer, the Court looked to several other factors that weighed much more strongly in favor of denial, including the fact that the plaintiff filed suit in its home district, one defendant's "center of gravity" (including its witnesses) was located substantially far from New Jersey (in Germany), and because 23 other parallel litigations involving the same patent were pending in this forum, strongly weighing against transfer for judicial economy reasons.  *Id.* at *2-3.  Unlike the situation in *Digitech*, the other factors all weigh strongly in favor of transfer in the instant case.[1]   And in *STX, Inc. v. Trik Stick, Inc.*, which Nanografix cites for the proposition that "[i]f the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action," the court found that the convenience of plaintiff's seven relevant witnesses in California outweighed the convenience of defendant's six relevant witnesses in Florida, without looking to the relative means of either party.  708 F. Supp. 1551, 1556 (N.D. Cal. 1988).  Here, Nanografix has not identified any relevant witnesses besides its President Daniel Lieberman, who is not even located within this district.  Even when considering that he is located closer to this forum compared to the Eastern District of

---

[1] Nanografix also cites *Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000) for this proposition. But in *Miracle*, which was not a patent infringement action, the defendants did not present any evidence in favor of transfer beyond the primary location of its witnesses, which was outweighed by several relevant witnesses in the district where the case was filed.  87 F. Supp. 2d at 1073.

Michigan, his convenience is outweighed by the four relevant witnesses Pollard identified in the Eastern District of Michigan as well as another two witnesses in Winnipeg.  (*See* Dkt. 26-2 at ¶¶ 1, 4, 6-7.)

**B.**   **The Other Factors Nanografix Points To Also Weigh in Favor of Transfer or Are Otherwise Neutral to the Analysis**

**1.**   **There Are No Agreements Relevant to the Court's Transfer Analysis**

Nanografix suggests that Pollard's agreement with the California lottery supports denial of transfer.  (Dkt. 39-1 at 13-14.)   But Nanografix's reliance on Pollard's agreement with the California Lottery is a red herring.   This is a case involving allegations of patent infringement—not a dispute concerning breach of contract or any other issue involving a contract between Nanografix and Pollard.   This Court has repeatedly indicated that "[t]his factor is inapplicable to non-contract claims" such as those at issue here.  *Dexcom, Inc. v. AgaMatrix, Inc.*, No. 16-cv-05947 SJO (ASx), 2017 WL 3433543, at *10 (C.D. Cal. Feb. 3, 2017); *Cascades Projection LLC v. NEC Display Solutions of Am., Inc.*, No. CV 15-00273 SJO (RZx), 2015 WL 12698454, at *5 (C.D. Cal. June 5, 2015).   Where "there are no relevant agreements between [plaintiff] and [defendant,] this factor does not bear on the transfer calculus."  *Am. Vehicular Sci. LLC v. Hyundai Motor Co.*, Nos. 15-01389-CJC(JCGx), 15-01390-CJC(JCGx), 15-01391-CJC(JCGx), 15-01392-CJC(JCGx), 2016 WL 6306061, at *3 (C.D. Cal. Apr. 27, 2016).   Thus, Nanografix's reliance on Pollard's agreement with the California Lottery should not be given any consideration under this wholly irrelevant factor.

**2.**   **Nanografix's Choice of Forum Should Be Entitled to Limited Deference.**

As Pollard explained in its opening memorandum, "[a] plaintiff's choice of venue is entitled to limited deference when the plaintiff elects to pursue a case outside of its home forum."  *Fontem Ventures B.V. v. R.J. Reynolds Vapor Co.*, No. CV 16-2286, 2016 WL 7496721, at *4 (C.D. Cal. Aug. 8, 2016); *see also Lou v. Belzberg*, 834 F.2d

730, 739 (9th Cir. 1987).  Nanografix argues that *Fontem* is a "drastically different case," because the plaintiffs in that action were companies organized under the laws of The Netherlands and had no connection to the state of California, let alone this district. (Dkt. 39-1 at 2, 14-15.)  But even where a plaintiff resides in the same state as its chosen forum, but not in the chosen forum itself, the same standard Pollard cited still applies. *American GNC*, 2018 WL 6074395, at *15 (granting motion to transfer venue and finding that deference to plaintiff's choice of forum in the Southern District of California was substantially reduced where plaintiff resided in the Central District of California instead).  Nanografix's choice to pursue this case in the Central District of California should be given limited deference.

### 3.  There Is Relatively Greater Ease of Access to Sources of Proof in the Eastern District of Michigan.

Nanografix argues that the storage of Pollard's documentary evidence in Ypsilanti, Michigan and Winnipeg, Canada does not weigh in favor of transfer because Pollard has "presented no evidence of any difficulty in transporting its documents or records from Michigan or Winnipeg to any location for this case."  (Dkt. 39-1 at 21.) But "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *American GNC*, 2018 WL 6074395, at *20 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)). Regardless of whether there is any difficulty in transporting these documents or records to any other location, as Pollard has noted, *all* documentation related to the manufacture, design, marketing, or sale of Pollard's Scratch FX tickets are located in either Ypsilanti, Michigan or Winnipeg, Canada.  (Dkt. 26-2 at ¶ 9.)  "Costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored."  *American GNC*, 2018 WL 6074395 at *20.

**4.    The Eastern District of Michigan Has A Stronger Local Interest.**

Nanografix alleges that the Central District of California has a "strong interest" in deciding this case because Nanografix is a California corporation and is being harmed by "Pollard's infringement through its sales of the Accused Tickets in California and elsewhere."  (Dkt. 39-1 at 22.)  "[T]his factor takes into account the current and transferee forum's interest 'in having localized controversies decided at home." *American GNC*, 2018 WL 6074395, at *20 (quoting *Hangzhou Chic Intelligent Tech. Co. v. Swagway, LLC*, No. 16-cv-04804, 2017 WL 1425915, at *4 (N.D. Cal. Apr. 21, 2017)).  "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *In re Hoffmann-La Roche*, 587 F.3d at 1338.

As Nanografix admits, Pollard sells accused Scratch FX tickets not just in California, but elsewhere throughout the United States.  (Dkt. 39-1 at 9, 17).  "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue."  *In re Hoffmamn-La Roche Inc.*, 587 F.3d at 1338; *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 878 (E.D. Tex. 2013) ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district.")  Thus, Pollard's sale or offer for sale of accused Scratch FX tickets in California does not give rise to the Central District of California having a substantial local interest in this matter.

The Eastern District of Michigan has a far stronger interest in this case.  "A strong local interest exists in the forum where the defendant designed and developed the accused products because allegations of patent infringement 'call[] into question the work and reputation of several individuals residing in order or near that district who presumably conduct business in that community.'"  *American GNC*, 2018 WL 6074395, at *21 (quoting *In re Hoffmann-La Rcohe Inc.*, 587 F.3d at 1336).  As Pollard has explained, all Scratch FX tickets sold in the United States as of the time of the filing of

the complaint in this action were manufactured in Pollard's Ypsilanti facility.  (Dkt. 26-2 at ¶ 3.)   Further, several witnesses and documentary evidence relevant to the manufacture, design, marketing, and sale of the Scratch FX tickets are located in Ypsilanti.  (Dkt. 26-2 at ¶¶ 1, 4-5.)  Other relevant witnesses and documents exist in Winnipeg, which is nearly twice as close to the Eastern District of Michigan than the Central District of California.  (Dkt. 26-2 at ¶¶ 6-7.)

### 5. Relative Court Congestion and Time to Trial Is Neutral.

Nanografix points to differences in the time to trial in the Central District of California and the Eastern District of Michigan as supporting denial of transfer.  (Dkt. 39-1 at 22.)  But, "[a]dministrative considerations such as docket congestion are given little weight in assessing the propriety of a Section 1404(a) transfer."  *American GNC*, 2018 WL 6074395, at \*21; *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984).  Further, "this factor appears to be the most speculative" of the transfer analysis, undermining its role.  *American GNC*, 2018 WL 6074395, at \*21 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)).  Thus, any difference in the time for this case to reach trial in either the Central District of California or the Eastern District of Michigan should be given little weight in the transfer analysis.

## IV.   CONCLUSION

The relevant factors weigh in favor of transfer to the Eastern District of Michigan and the Court should transfer this case to that district.

15

1    DATED:  December 3, 2018            Respectfully submitted,
                                          Kirkland & Ellis LLP
2

3                                   By:   */s/ Kourtney Baltzer*
                                          Lauren Schweitzer (SBN 301654)
4                                         333 South Hope Street
                                          29th Floor
5                                         Los Angeles, CA 90071
                                          Telephone:  (213) 680-8400
6                                         Facsimile:   (213) 680-8500
                                          lauren.schweitzer@kirkland.com
7
                                          Russell E. Levine, P.C. (*pro hac vice*)
8                                         Kourtney Baltzer (*pro hac vice*)
                                          300 North LaSalle Street
9                                         Chicago, IL 60654
                                          Telephone:  (312) 862-2000
10                                        Facsimile:   (312) 862-2200
                                          russell.levine@kirkland.com
11                                        kourtney.baltzer@kirkland.com

12                                        *Attorneys for Defendant Pollard*
                                          *Banknote Limited*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

By: _/s/Kourtney Baltzer_
Kourtney Baltzer